UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:18-cr-00076-AWI-BAM-5** |
| **Plaintiff** | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)** |
| **SHEENA TAYLOR,** | |
| **Defendant** | |
| | (Doc. No. 287) |

Defendant Sheena Taylor is currently incarcerated at FCI Dublin.  Defendant now moves the Court to release Defendant from prison pursuant to 18 U.S.C. § 3582(c)(1)(A) on grounds that the current COVID-19 pandemic — coupled with Defendant's poor health conditions, which include severe obesity, type 2 diabetes, and hypertension — present an extraordinary and compelling basis for compassionate release.  For the reasons discussed below, the Court will deny Defendant's motion for compassionate relief.

**1.   Background.**

On April 29, 2019, Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute controlled substances (methamphetamine and heroin) in violation of 21 U.S.C. §§ 846 and 841(a)(1).  See Doc. No. 135.  On October 21, 2019, the Court sentenced Defendant to 150 months imprisonment with 60 months of supervised release.  Defendant began her incarceration on May 24, 2018.  Currently Defendant is incarcerated at FCI Dublin, which is a low security federal correctional institution located in Dublin, California.

On May 7, 2020, Defendant submitted to her prison case manager, Mr. Villanueva, a written request for compassionate release.  The written request included a BOP Form BP-A148.055, which is titled "Inmate Request to Staff," and the form is addressed to "Warden Jenkins c/o Villanueva."  Doc. No. 290-1.  The request included a hand-written note from Defendant, which stated:

> My name is Sheena Taylor #77324097 and I am asking to serve the remainder of my sentence on home confinement per suant [sic] to the authority of Attorney General William Barr's memo on 4-3-20 for the Cares Act. The Coronavirus disease 2019 is rapidly spreading in all parts of the US., including its prisons. There is no vaccine or care for this deadly disease. The Center for Disease Controls recommends protecting oneself from the disease by frequent handwashing, frequently sterilizing of surfaces and individuals remaining at a distance of at least six feet from each other. It is impossible to do this in this facility. Added to my diabetes, high blood pressure, high cholesterol, severe obesity, the CDC places me in a heightened risk category for severe illness from COVID-19. Upon my release I plan to return to my apartment, which I am currently letting one of my friends stay in and take care of my things as well as the bills. I receive SSI which includes Medi-CA so I will be able to support myself and continue my medical care. Thank you for your time and assistance in this matter.

Id.

In the thirty days immediately after Defendant submitted her request on May 7, 2020, the warden did not respond to Defendant's request.

On June 26, 2020, Defendant moved the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

**2.    Defendant's argument.**

Defendant argues that the Court should compassionately release Defendant from prison pursuant to § 3582(c)(1)(A) because there is an extraordinary and compelling basis for compassionate release. Namely, Defendant has underlying health conditions that make her a high risk for serious illness if she becomes infected with COVID-19, and those health conditions include severe obesity, type 2 diabetes, and hypertension. Defendant points to recent data confirming that individuals who suffer from obesity, diabetes, and hypertension face a higher risk of becoming seriously ill if infected with COVID-19. Defendant also contends that she is not safe at FCI Dublin because COVID-19 has made its way into FCI Dublin. Specifically, at the time that Defendant filed her motion with the Court on June 26, 2020, at least one person at FCI Dublin (an employee) had tested positive for COVID-19. More importantly, Defendant argues that the actual number of positive COVID-19 cases at FCI Dublin is likely higher than just one person, and this is because FCI Dublin has only completed 27 tests for their 1,023 inmates as of June 23, 2020. In light of all these facts, Defendant contends that the real risk of Defendant becoming seriously ill if she becomes infected from COVID-19 warrants her compassionate release from incarceration.

Defendant also contends that compassionate release is permissible because Defendant is not a danger to the community. This is because none of Defendant's multiple criminal convictions involve allegations of violence. Further, Defendant claims that she desires to detach herself from future criminality, which is demonstrated by Defendant accepting responsibility for her actions in this case and pleading guilty, as well as taking improvement courses in prison.

Defendant also contends that she exhausted her administrative remedies before moving the Court for compassionate release, meaning the Court has jurisdiction to grant Defendant's motion. This is so because on May 7, 2020, Defendant submitted to her case manager a written request for compassionate release, and the written request was expressly addressed to the warden. The request identified Defendant's health conditions (including severe obesity, high blood pressure, and diabetes) that placed Defendant at risk of serious illness if she becomes infected with COVID-19. The request also included a proposed release plan for Defendant's housing, financial support, medical insurance, and medical treatment. During the thirty days immediately after Defendant submitted the request, the warden never responded to the request. Therefore, according to Defendant, Defendant exhausted her administrative remedies before moving the Court for compassionate release.

**3.    Government's argument.**

The government argues that Defendant's motion for compassionate release should be denied for at least three reasons. First, Defendant did not exhaust her administrative remedies before moving the Court for compassionate release. This is so for two reasons. One, Defendant did not submit her written request to the warden, as is required by 28 C.F.R. § 571.61, which regulates the implementation of 18 U.S.C. § 3582(c)(1)(A). Two, the written request that Defendant submitted to the case manager on May 7, 2020, is a request for home confinement, not a request for compassionate release. Home confinement, which is statutorily authorized under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541, is legally distinct from compassionate release under 18 U.S.C. § 3582(c)(1)(A). Unlike compassionate release, home confinement is a placement decision, meaning a prisoner placed under home confinement is not released from the prison sentence but, rather, continues serving the sentence while confined at home. Because Defendant

3

submitted a request for home confinement, Defendant's request on May 7, 2020, "did not trigger" or begin the administrative thirty-day lapse period imposed by 18 U.S.C. § 3582(c)(1)(A). Doc. No. 290 at 21.

Second, even if Defendant did exhaust her administrative remedies before moving the Court for compassionate release, Defendant is ineligible for compassionate release because Defendant cannot demonstrate that she is, as required by U.S.S.G § 1B1.13(2), "not a danger to the safety of any other person or to the community." U.S.S.G § 1B1.13(2). The following considerations demonstrate this point: (1) Defendant's criminal history includes four convictions since 2005 for drug offenses; (2) Defendant's parole was revoked on at least two occasions; (3) Defendant was granted pretrial release after she was arrested on the federal charge in this case, but during the five weeks that Defendant was on pretrial release, Defendant had three drug tests that were positive for marijuana and one drug test that was positive for cocaine; and (4) Defendant had loaded guns stored at her home when she was arrested in this case in April 2018.

Third, Defendant has not shown that the government is unable to manage Defendant's health conditions in FCI Dublin, even during the COVID-19 pandemic. Defendant is receiving appropriate and adequate medical treatment in prison. Further, as of July 7, 2020, there has only been one inmate at FCI Dublin who has tested positive for COVID-19, and the government is able to manage a COVID-19 outbreak should it emerge at FCI Dublin.

**4.     Legal standard.**

Criminal defendants are empowered to request compassionate release for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). Specifically, in relevant part, 18 U.S.C. § 3582 provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

4

>such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. 3553(a)] to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i).

Before a defendant may move a federal court for compassionate release due to extraordinary and compelling circumstances, the defendant "must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also Alam, 960 F.3d at 833-34. Pursuant to the "limited futility exception" of § 3582(c)(1)(A)(i), "[i]f a defendant's request is not acted upon within [thirty] days, the defendant may file a motion for compassionate release in federal court, but if the request is denied within [thirty] days, the defendant must continue to appeal and exhaust available administrative remedies." United States v. Bolanos, 2020 WL 4748451, at *4 (E.D. Cal. Aug. 17, 2020) (Ishii, J.) (citing cases).

**5.    Discussion.**

>**A.    *Exhaustion*.**

First, the Court concludes that Defendant's motion is not jurisdictionally barred by the thirty-day limited futility exception of § 3582(c)(1)(A), which is identified above. See Bolanos, 2020 WL 4748451, at *4 (discussing thirty-day limited futility exception). Defendant submitted to her case manager a written request for compassionate release on May 7, 2020, and the request was expressly addressed to the warden. During the thirty-day period immediately after the request was submitted, the warden did not respond to Defendant's request. Only after the expiration of the thirty-day period did Defendant move the Court for compassionate release. These facts sufficiently demonstrate Defendant's compliance with the thirty-day limited futility exception.

Second, the Court concludes that Defendant's written request to the warden complied with the regulatory requirements of 28 C.F.R. § 571.61. Some of the regulatory requirements are as follows: (1) the request "ordinarily" must be in writing; (2) the request must contain information about the "extraordinary or compelling circumstances that the inmate believes warrant

1  consideration"; (3) and the request must contain information about the "proposed release plans,
2  including where the inmate will reside, how the inmate will support himself/herself, and, if the
3  basis for the request involves the inmate's health, information on where the inmate will receive
4  medical treatment, and how the inmate will pay for such treatment."  28 C.F.R. § 571.61(a)(1)-(2).
5  Defendant's request was in writing, contained information about Defendant's "heightened risk
6  category for severe illness from COVID-19" due to her medical conditions, and contained
7  information about Defendant's proposed release plans.  Doc. No. 290-1.  These facts demonstrate
8  Defendant's compliance with the regulatory requirements of 28 C.F.R. § 571.61.  This conclusion
9  is only bolstered by the government's inability to explain how Defendant failed to comply with the
10 regulatory requirements.  See Doc. No. 290 at 21 (the government asserting — but failing to
11 explain how — Defendant's request was not a satisfactory request for compassionate release).

12       The Court is not persuaded by the government's argument that Defendant's request was a
13 request for home confinement under 18 U.S.C. § 3624(c)(2) and 34 § U.S.C. § 60541 but not a
14 request for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The premise of the
15 government's argument is that Defendant's request "did not contain sufficient information to
16 constitute a properly submitted Compassionate Release/RIS request to BOP."  Doc. No. 290 at 21.
17 The government's premise fails because, first, Defendant's request did comply with the regulatory
18 requirements of 28 C.F.R. § 571.61, as discussed above, and, second, the government failed to
19 explain how Defendant's request lacked the requisite information under 28 C.F.R. § 571.61 and 18
20 U.S.C. § 3582(c)(1)(A), as noted above.

21       The Court is also not persuaded by the government's argument that Defendant's request
22 was not submitted to the warden.  To support this argument, the government merely asserts that
23 "[t]he BOP does not have any record of [Defendant] submitting a request for compassionate
24 release/reduction in sentence to the Warden."  Doc. No. 290 at 21.  This assertion is betrayed by
25 the fact that the government concedes that Defendant submitted her written request to her case
26 manager on May 7, 2020, and the request was clearly addressed to the warden.  The government
27 failed to attempt to explain why Defendant's request should not be considered submitted to the
28 warden for purposes of 18 U.S.C. § 3582(c)(1)(A).  See United States v. Resnick, 2020 WL

6

1651508, at *6 (S.D.N.Y. Apr. 2, 2020) ("[The defendant] personally handed [the request] to his counselor, a representation the Government has not disputed.  This is typically the only mechanism by which an inmate can communicate with the warden's office.  Inmates are not typically handed the keys of the warden's office so they can place their applications for compassionate release on the warden's desk.").

For the foregoing reasons, the Court concludes that Defendant sufficiently exhausted her administrative remedies pursuant to the thirty-day limited futility exception of 18 U.S.C. § 3582(c)(1)(A).

### ***B.*** *** 18 U.S.C. 3553(a) factors.***

The Court concludes that the factors in 18 U.S.C. § 3553(a) and the relevant policy statement in U.S.S.G. § 1B1.13 weigh against granting Defendant's motion for compassionate release.  A court that is considering a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Some of the factors in § 3553(a) are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."  18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(C).  Additionally, a relevant Sentencing Commission policy statement, U.S.S.G. § 1B1.13, provides that the Court must consider whether the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1BI.13(2).

The Court concludes that the factors in 18 U.S.C. § 3553(a) and the relevant policy statement in U.S.S.G. § 1B1.13 weigh against granting Defendant's motion for compassionate release.  This is because Defendant has failed to persuade the Court that the public will be protected from future crimes committed by Defendant if the Court releases Defendant from prison. Based on the government's unrefuted assertions, it appears that (1) Defendant's criminal history includes four convictions since 2005 for drug offenses; (2) Defendant's parole was revoked on at least two occasions; (3) Defendant was granted pretrial release after she was arrested on the federal charge in this case, but during the five weeks that Defendant was on pretrial release,

7

Defendant had three drug tests that were positive for marijuana and one drug test that was positive for cocaine; and (4) Defendant had loaded guns stored at her home when she was arrested in this case in April 2018.  Additionally, Defendant admits that she has a "history of mental health issues and substance abuse addiction."  Doc. No. 291 at 12 n.9.  These facts show a history of repeated criminal activity committed by Defendant — even in the midst of and after government penal intervention.  This history leads the Court to be very concerned that Defendant will return to criminal activity (including drug possession and distribution) if she is released from prison at this time, especially since it appears that Defendant has only served 28 months (or 18%) of her 150-month sentence.

### *C.* *Extraordinary and compelling reason.*

The Court concludes that Defendant has failed to demonstrate an extraordinary and compelling basis for compassionately releasing Defendant from her incarceration at FCI Dublin at this time.  The Court does not disagree that Defendant's severe obesity and type 2 diabetes make Defendant a high risk for serious illness if Defendant becomes infected with COVID-19.  But Defendant has not persuaded the Court that the conditions at FCI Dublin warrant compassionate release of Defendant at this time.  As of September 14, 2020, it appears that FCI Dublin has completed COVID-19 testing for 175 inmates, and only 5 (or approximately 3%) of those 175 inmates tested positive.  See COVID-19 Inmate Test Information, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited September 14, 2020).  Based on these figures, the Court is not persuaded that the number and percentage of inmates who have tested positive for COVID-19 at FCI Dublin is sufficient to warrant compassionate release for Defendant at this time.[1]

---

[1] This point is illustrated, in part, by comparing FCI Dublin at this time to other federal correctional institutions throughout the United States.  The low percentage of positive COVID-19 tests at FCI Dublin pales in comparison to the figures at other facilities, where the percentage of positive COVID-19 tests ranges from 11% (e.g., Atlanta USP, where 440 tested and 47 tested positive) to 29% (e.g., Beaumont Medium FCI, where 329 tested and 96 tested positive) to 41% (e.g., Carswell FMC, where 1289 tested and 525 tested positive) to 63% (e.g., Fort Worth FMC, where 932 tested and 587 tested positive) to 78% (e.g., Lompoc FCI, where 988 tested and 774 tested positive).  See COVID-19 Inmate Test Information, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited September 14, 2020).

In sum, the factors in 18 U.S.C. § 3553(a) and the relevant policy statement in U.S.S.G. § 1B1.13 weigh against releasing Defendant from incarceration at this time.  Additionally, Defendant has not demonstrated an extraordinary and compelling basis for compassionately releasing her from incarceration at FCI Dublin at this time.  Therefore, the Court will deny Defendant's motion for compassionate release.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for compassionate release (Doc. No. 287) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   September 15, 2020

SENIOR  DISTRICT  JUDGE