1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | Case No. 1:18-CR-00076 JLT BAM |
| 12                    Plaintiff-Respondent, | ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE UNDER 28 U.S.C. § 2255 IN PART AND ORDERING EVIDENTIARY HEARING |
| 13  v. | |
| 14  SHEENA TAYLOR, | |
| 15                    Defendant-Movant. | (Doc. 301) |
| 16 | |

17          Ms. Taylor filed a motion to vacate, set aside, or correct her 150-month sentence under 28

18  U.S.C. § 2255. (Doc. 301.) Despite having entered a plea agreement that estimated her sentence

19  in the range of 188 to 235 months, she now argues that the ineffective assistance of her counsel

20  undermined her ability to enter the agreement knowingly and voluntarily. (*Id.*; Doc. 133 at 9.) For

21  the reasons set forth below, the Court **DENIES** the motion on Grounds One, Two, Three, and

22  Four and **ORDERS** an evidentiary hearing to determine the merits of Ground Five.

23                          **I.    BACKGROUND**

24          In 2018, Movant was indicted for one count of conspiracy to distribute and possession

25  with intent to distribute methamphetamine and heroin. (Doc. 1 at 1.) In a parallel case, the

26  Government charged Movant with a related crime that it subsequently dismissed pursuant to the

27  plea agreement entered in this case. (Doc. 133 at 4.) Movant pleaded guilty to count one on April

28  29, 2019. (*Id.* at 2, 11.) The plea agreement contains express waivers of certain constitutional

1

1    rights, including the right to appeal or collaterally attack under 28 U.S.C. § 2255 her conviction

2    or sentence. (*Id.* at 9-10.) The agreement estimated Movant's sentence to be within the range of

3    188 to 235 months based on the assumption that Movant's criminal history would place her in

4    criminal history Category II. (*Id.* at 8-9.) Movant alleges the Government promised to

5    recommend a five-year sentence, which does not appear in the plea agreement. (Doc. 301 at 14.)

6         During the presentencing investigation, the United States Probation Office discovered

7    Movant had additional prior criminal history of various state drug-related offenses, which placed

8    her in Category IV for purposes of the federal sentencing guidelines. (Doc. 182 at 13.) Movant

9    does not dispute her criminal history and understood before entering the plea agreement that her

10   prior convictions could impact her sentence in this case. (Doc. 301 at 13; Doc. 358 at 152.)

11   However, Movant believed her former attorney, who represented her in the state criminal cases,

12   expunged or was working to expunge the state charges from her record. (Doc. 301 at 13.)

13   According to Movant, she asked her attorneys representing her in this case, Ms. Moran and Ms.

14   Kinder,[1] to ensure her state charges had been expunged. (*Id.*) Ms. Moran and Ms. Kinder dispute

15   this fact and maintain Movant never retained their firm for expungement of the state charges.

16   (Doc. 358 at 59-60, 77.)

17        At the time of sentencing, the state charges had not been expunged. (*See* Doc. 182 at 10-

18   13.) The Court accepted Probation's calculation of the applicable guideline range of 235 to 293

19   months, based on a total offense level of 35 and Criminal History Category IV. (*See id.*; Doc. 338

20   at 3.) Probation recommended sentencing at the low end of the guidelines range and a motion was

21   presented to reduce the sentence by an additional thirty percent. (*See* Doc. 338 at 3.)  The Court

22   sentenced Movant to 150 months of confinement in federal prison. (Doc. 358 at 43.)

23        Movant alleges that following the sentencing hearing, she repeatedly asked Ms. Moran to

24   seek an appeal, because she believed she was entitled to a sixty-month sentence. (Doc. 301 at 14-

25   16.) Ms. Moran denies receiving any request to file a notice of appeal. (Doc. 358 at 61-62.) On

26

27   _____

28   [1] Movant's motion focuses her ineffective assistance of counsel allegations against Ms. Moran. (Doc. 301 at 13-16.)
     Ms. Moran acted as primary counsel for Movant in this case. (Doc. 358 at 48.) Ms. Kinder conducted the initial
     intake interview with Movant but otherwise had little involvement in the case. (*Id.* at 74-75.)

October 23, 2020, Movant filed a motion to vacate, set aside, or correct her sentence, arguing that Ms. Moran's alleged deficient conduct throughout the plea-bargaining process, sentencing, and after sentencing amounts to ineffective assistance of counsel such that she was deprived of her Sixth Amendment right to counsel. (Doc. 301.)

## II.   LEGAL STANDARD

### A.   Collateral Attack under 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). A § 2255 motion entitles a federal prisoner to relief "[i]f the court finds that . . . there has been . . . a denial or infringement of the constitutional rights of the prisoner . . . ." 28 U.S.C. § 2255(b). Generally, only a narrow range of claims fall within the scope of § 2255. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The pleadings of a *pro se* litigant are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the requirement of liberal construction does not mean the court can ignore an obvious failure to allege facts that set forth a cognizable claim. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980) ("We also concur in the

1   dismissal of the allegations concerning the photographic array shown to some witnesses as vague,

2   conclusory and without any facts alleged in support of the claim.").

3   **B.      Ineffective Assistance of Counsel**

4          A defendant may collaterally attack the validity of her plea, conviction, or sentence if

5   defendant's counsel deprived defendant of the Sixth Amendment right to "effective assistance,

6   simply by failing to render 'adequate legal assistance.'" *Strickland v. Washington*, 466 U.S. 668,

7   686 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). To mount an ineffective

8   assistance of counsel challenge, the petitioner must establish two elements: deficient performance

9   and prejudice. *See Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland v.*

10  *Washington*, 466 U.S. 668, 687 (1984)). Deficient performance means counsel's representation

11  "fell below an objective standard of reasonableness considering all the circumstances." *Stanley*,

12  633 F.3d at 862 (citing *Strickland*, 466 U.S. at 688). To show deficient performance of counsel,

13  the petitioner must demonstrate that his attorney "made errors that a reasonably competent

14  attorney acting as a diligent and conscientious advocate would not have made." *Butcher v.*

15  *Marquez*, 758 F.2d 373, 375-76 (9th Cir. 1985). A fair assessment of attorney performance

16  requires courts to make every effort "to eliminate the distorting effects of hindsight, to reconstruct

17  the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

18  perspective at the time." *Strickland*, 466 U.S. at 689. Courts accord a "strong presumption that

19  counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

20  466 U.S. at 689.

21         When the defendant challenges a sentence or conviction that resulted from a plea

22  agreement, the movant must demonstrate the advice from counsel was "so incorrect and so

23  insufficient that it undermined [movant's] ability to make an intelligent decision about whether to

24  accept the [plea] offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (internal

25  quotations omitted). The question is not whether "counsel's advice [was] right or wrong, but . . .

26  whether that advice was within the range of competence demanded of attorneys in criminal

27  cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "Courts should not upset a plea solely

28  because of *post hoc* assertions from a defendant about how he would have pleaded but for his

4

1    attorney's deficiencies," and "should instead look to contemporaneous evidence to substantiate a

2    defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

3         As to the second element, prejudice occurs when "there is a reasonable probability that,

4    but for counsel's unprofessional errors, the result of the proceeding would have been different."

5    *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine the

6    confidence in the outcome." *Id.* To overcome a negotiated plea agreement, the movant must

7    demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded

8    guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

9                                   **III.    ANALYSIS**

10        Movant challenges her sentence on five grounds of ineffective assistance of counsel:

11   (1) failure to ensure the Court followed the plea agreement, by not securing pre-approval from the

12   Court or requesting a downward departure; (2) failure to investigate criminal history and seek

13   expungement of state charges; (3) failure to meet with Movant and prepare for the presentencing

14   interview, to review the presentencing report with Movant, and to raise objections to the report;

15   (4) failure to prepare and adequately advocate during sentencing hearing; (5) failure to file notice

16   of appeal and consult with Movant regarding such rights. (Doc. 301 at 1-8.)

17        Movant argues Mrs. Moran's errors deprived her of the ability to enter her plea agreement

18   knowingly and voluntarily. (*Id.* at 15-16; Doc. 373 at 3.) She argues she would not have entered

19   the agreement but for her understanding that the Government intended to recommend a fifty

20   percent reduction to the minimum sentencing guideline, entitling her to a five-year sentence.

21   (Doc. 373 at 3.) The Government responds that it never promised a five-year sentence and none

22   of the alleged errors by Ms. Moran amount to ineffectiveness of counsel such that it negated the

23   voluntary and knowing nature of the plea agreement. (Doc. 358 14-21.) The Government also

24   argues that Movant waived the right to collaterally attack her sentence on Grounds One through

25   Four. (*Id.* at 21.) As discussed below, Movant makes several allegations of ineffective assistance

26   of counsel that pertain to her ability to have entered the agreement knowingly and voluntarily.

27   These constitute non-waivable claims which the Court addresses below to assess the validity of

28   her plea agreement. Movant's remaining challenges to counsel's conduct constitute waivable

1    claims because they could not have impacted Movant's state of mind in entering her plea.

2    Whether Movant has indeed waived these claims turns on the validity of her plea agreement and

3    an assessment of her non-waivable claims. *See Washington v. Lampert*, 422 F.3d 864, 870 (9th

4    Cir. 2005).

5    **A.      Whether Movant Entered the Agreement Knowingly and Voluntarily**

6            A defendant may waive the statutory right to collaterally attack her sentence or conviction

7    by knowingly and voluntarily entering a negotiated plea agreement containing such waiver.

8    *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). These waivers are enforceable even

9    though the defendant "may not know the specific detailed consequences of invoking it," *United*

10   *States v. Ruiz*, 536 U.S. 622, 629-30 (2002), may "not be aware of possible grounds of appeal," or

11   "the severity of the sentence that will be imposed," *United States v. Lo*, 839 F.3d 777, 784 (9th

12   Cir. 2016). "The sole test of a waiver's validity is whether it was made knowingly and

13   voluntarily." *United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000). In determining

14   whether a waiver was knowingly and voluntarily made, courts consider "the express language of

15   the waiver and the facts and circumstances surrounding the signing and entry of the plea

16   agreement, including compliance with Federal Rule of Criminal Procedure 11." *United States v.*

17   *Nguyen*, 235 F.3d 1179, 1182 (9th Cir. 2000).

18           The habeas petitioner "bears the burden of establishing that his guilty plea was not

19   voluntary and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). During a

20   hearing to enter the defendant's change of plea, the district court must inform the defendant of

21   "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the

22   sentence." *Lo*, 839 F.3d at 785 (citations omitted). When the district court holds such procedure,

23   it is "sufficient to find a knowing and voluntary waiver." *Id.*; *see also* Fed. R. Crim. P.

24   11(b)(1)(N). A "diligent colloquy" to confirm defendant's understanding creates a strong

25   presumption that the petitioner knowingly and voluntarily entered into his plea agreement,

26   thereby waiving his right to collaterally attack his conviction and sentence. *See Watson*, 582 F.3d

27   at 987; *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (The representations of a

28   defendant at a plea hearing constitute "a formidable barrier in any subsequent collateral

6

1    proceedings. Solemn declarations in open court carry a strong presumption of verity.").

2         Movant's plea agreement contains express waivers to "any right to bring a collateral

3    attack . . . under 28 U.S.C. § 2255." (Doc. 133 at 10.) During her change of plea hearing, the

4    Court performed a diligent colloquy to confirm she understood and agreed to all terms in the plea

5    agreement. (Doc. 337 at 3-6.) Movant testified that she had reviewed the agreement with counsel,

6    understood the waiver of her rights, and had entered the agreement without pressures or promises

7    outside of the agreement. (*Id.*)

8         Q. I think I have your plea agreement in my hand, . . . Do you
          remember signing this plea agreement twice?
9

10        A. Yes.

11        . . .

12        Q. [D]id you go through the plea agreement with counsel?

13        A. Yes.

14        Q. Those signatures mean that when you went through, if you had
          questions, you asked her, she answered to your satisfaction, and you
15        don't have more questions about the plea agreement. Is that what
          those signatures mean to you?

16        A. Yes.

17        . . .

18        Q. Do you understand that you are waiving your right to appeal?

19        A. Yes.

20        . . .

21        Q. And you understand that there is a ten-year mandatory minimum
          sentence absent a motion by the government for a reduction of your
22        sentence?

23        A. Yes.

24        Q. Is anybody promising you anything other than what's in the plea
          agreement?
25

26        A. No.

27        . . .

28        Q. I'm obligated to consider the federal guidelines at sentencing, but
          I'm not obligated to follow them. If I don't, you can't take your

7

1    change of plea back. Do you understand?

2         A. Yes.

3    (Doc. 337 at 3-6.) Movant's testimony creates a strong presumption that she knowingly and

4    voluntarily entered the plea agreement and consented to the waiver of her right to collaterally

5    attack her sentence. *See United States v. Barajas-Guerrero*, 2021 WL 6127040, at *5 (E.D. Cal.

6    Dec. 28, 2021) (finding defendant's confirmation of his signature and understanding of the plea

7    terms during the colloquy evidenced his knowing and voluntary waiver to collaterally attack his

8    plea, conviction, and sentence).

9         Despite this presumption, Movant makes several arguments to attack the validity of her

10   plea agreement. The Supreme Court observed that "no procedural device for the taking of guilty

11   pleas is so perfect in design and exercise as to warrant a per se rule rendering it 'uniformly

12   invulnerable to subsequent challenge.'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting

13   *Fontaine v. United States*, 411 U.S. 213, 215 (1973)). A defendant may rebut the presumption of

14   validity for plea agreements with allegations "related primarily to purported occurrences outside

15   the courtroom and upon which the record could, therefore, cast no real light." *Machibroda v.*

16   *United States*, 368 U.S. 487, 494-95 (1962) (holding a claim for relief may arise from allegations

17   that the government promised him a lower sentence and directed him not to discuss the matter

18   with his attorney). In addition, plea agreement waivers do not bar challenges to the validity of the

19   agreement itself. *Abarca*, 985 F.2d at 1014. Permissible challenges include claims that the

20   ineffective assistance of counsel deprived the defendant of the ability to enter the agreement

21   knowingly and voluntarily. *Washington*, 422 F.3d at 870; *see also United States v. Chan*, 721 F.

22   App'x 728, 728 (9th Cir. 2018) ("A waiver of a defendant's right to appeal or collaterally attack a

23   conviction does not preclude a subsequent claim of ineffective assistance of counsel in which the

24   defendant calls into question his entry into the agreement that contained the waiver."). As

25   discussed below, Movant raised several grounds to challenge the presumption of validity

26   accorded to her agreement.

27

28

1    1.   <u>Alleged Failure by Government to Recommend a Five-Year Sentence</u>

2        Movant argues she would not have agreed to plead guilty if not for the Government's

3    promise to recommend a fifty percent reduction to her sentence. (*See e.g.*, Doc. 373 at 2.) Based

4    upon that purported promise, Movant contends she believed she was entitled to a five-year

5    sentence. (*Id.*) Under the terms of the plea agreement, the Government agreed to recommend

6    reducing the sentence by "*up to* 50% of the applicable guideline sentence if she provides

7    substantial assistance to the government." (Doc. 133 at 5 (emphasis added).) The Government

8    also agreed to recommend a sentence at the low end of the guideline range. (*Id.*) The plea

9    agreement estimated the applicable guideline range between 188 and 235 months. (*Id.* at 8-9.)

10   The agreement does not contain any promise or guarantee to recommend a five-year sentence.

11       To the extent Movant contends Ms. Moran's (or, for that matter, any other person's)

12   conduct led her to the incorrect presumption that the agreement guaranteed her a five-year

13   sentence and that this presumption impacted her ability to knowingly and voluntarily plead guilty,

14   Movant's alleged misunderstanding does not invalidate her agreement. "[W]hen a plea rests in

15   any significant degree on a promise or agreement of the prosecutor, so that it can be said to be

16   part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*,

17   404 U.S. 257, 262 (1971). However, mere allegations that a promise was made does not

18   undermine a plea agreement. *Id.* Instead, the defendant must show "that his guilty plea rested in a

19   significant degree on that promise." *United States v. Jackson*, 21 F.4th 1205, 1213 (9th 2022). To

20   evaluate whether the guilty plea significantly rested on the promise, the Court must determine

21   "what the defendant reasonably believed to be the terms of the plea agreement at the time of his

22   plea." *Id.* (citing *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002)). The terms of

23   the plea agreement itself and statements made by the defendant during the plea colloquy best

24   indicate the defendant's understanding of the parameters of the plea arrangement. *Jackson*, 21

25   F.4th at 1213.

26       First, the terms of Movant's plea agreement unambiguously repudiate her contentions that

27   the Government promised or guaranteed a five-year sentence. The agreement expressly disclaims

28   that the "government is not obligated to recommend any specific sentence." (Doc. 133 at 8-9.) It

1   also ensured that Movant understood the Government may recommend *less* than a fifty percent

2   reduction or no reduction at all. (*Id.* at 5.) In addition, the plea agreement expressly disavows the

3   existence of any other promise, understanding, or condition between the parties. (*Id.* at 11.) The

4   Government also denies having promised to recommend a five-year sentence. (Doc. 358 at 15.)

5   Thus, the terms of the plea agreement clearly and unambiguously evidence the Government had

6   not promised a five-year sentence to induce Movant to plead guilty. *See United States v. Rashid*,

7   2010 WL 1486495, at *3 (E.D. Cal. Apr. 12, 2010) (dismissing a § 2255 petition where defendant

8   claimed counsel promised a 186-month sentence but the plea agreement "clearly reflects" counsel

9   could not make a "binding prediction or promise regarding the sentence he will receive").

10       Second, Movant's statements during her plea colloquy confirm that she understood the

11   Government did not promise to recommend a five-year sentence when she entered her guilty plea.

12   During her change of plea hearing, Movant confirmed that she had reviewed and understood the

13   terms of her plea agreement. (Doc. 337 at 3.) Moreover, she specifically swore that no promises

14   existed outside the plea agreement. (*Id.* at 6.) Her current contradictory allegations cannot

15   overcome the formidable barrier created by her statements made in open court during the plea

16   colloquy. *See Jackson*, 21 F.4th at 1213-15 (affirming dismissal of a § 2255 petition where

17   defendant argued the government verbally promise not to offer a lower sentence to his co-

18   defendant but statements during his plea colloquy clearly and unambiguously confirmed that no

19   "side agreement or anything that is not written down" induced his guilty plea); *see also United

20   States v. Rangel*, 2019 WL 2137450, at *3 (E.D. Cal. May 16, 2019) (dismissing defendant's

21   argument that he only entered the plea agreement because he believed it would lower his sentence

22   to 135 months because he testified at the change of plea hearing that he understood "the precise

23   contours of his sentence would be determined at a later date").

24       Movant's conclusory allegations that the Government promised a five-year sentence do

25   not have sufficient evidentiary basis in the record. *See Neighbors v. United States*, 457 F.2d 795,

26   795 (9th Cir. 1972) (affirming denial of § 2255 motion where allegations regarding ineffective

27   assistance of counsel were entirely conclusory and without support in the record). Movant's only

28   evidence to support her claim are letters she sent to Ms. Moran noting she expected a sixty-month

1    sentence. (Doc. 358 at 164, 166.) The letters, however, do not describe a promise or conversation

2    with the Government that guaranteed or supported her expectation. Rather, the letters reflect

3    Movant's attempts to strategize with Ms. Moran to obtain the lowest possible sentence. (*Id.* at

4    164.) For example, in one letter Movant suggests reducing the sixty-month potential sentence to

5    merely time served with no probation or parole. (*Id.*) Although Movant's letters, written after she

6    already entered her guilty plea, offer some evidence of her hopeful expectation for sentencing,

7    they do not provide sufficient specificity or detail regarding the Government's alleged promise

8    such that the evidence can refute the "unambiguous and completely integrated terms" in her plea

9    agreement and sworn statements in her plea colloquy. *Compare United States v. Ajugwo*, 82 F.3d

10   925, 927-28 (9th Cir. 1996) (affirming dismissal of petition where defendant argued the

11   government verbally promised not to oppose application of the safety valve but the plea

12   agreement unambiguously made clear "there are no additional promises, understandings or

13   agreements" between the parties) *with Machibroda*, 368 U.S. at 491-96 (holding defendant's

14   specific and detailed factual assertions that the AUSA met with defendant three times, promising

15   a sentence of less than twenty years and pressuring defendant not to discuss the matter with his

16   attorney, and where the government admitted at least one of these conversations occurred,

17   warranted an evidentiary hearing to determine if the promises induced defendant's guilty plea).

18          Moreover, even if Movant had a subjective expectation to receive a five-year sentence,

19   she has not shown resulting prejudice from her misunderstanding. Regardless of whether the

20   Government recommended or promised to recommend a five-year sentence, Movant understood

21   that the Court was not bound by the plea agreement's terms. (Doc. 337 at 6.) Thus, the Court

22   "dispelled any reliance movant may have misplace on" Ms. Moran's mischaracterization of the

23   expected outcome. *Rashid*, 2010 WL 1486495, at *5; *see also Doganiere v. United States*, 914

24   F.2d 165, 168 (9th Cir. 1990) (affirming no prejudice by counsel's error in predicting the

25   sentencing outcome because when taking defendant's plea, the court explained it had discretion to

26   decide his sentence). Movant did not put forth any evidence showing she could have received a

27   lower sentence than the one imposed. The Court imposed a 150-month sentence, which was even

28   lower than the applicable guideline range estimated by the plea agreement (188 to 235 months)

1    and significantly lower than the guideline range calculated by Probation (235 to 293 months).

2    (Doc. 182 at 5; Doc. 133 at 8-9; Doc. 358 at 43.) Movant has done nothing to demonstrate that

3    she was promised or would have been entitled to a sentence less severe than 150 months. *See*

4    *United States v. Beltran-Moreno*, 556 F.3d 913, 917 (9th Cir. Feb. 10, 2009) (noting the unlikely

5    probability of prejudice when the court imposes a sentence well below the minimum guideline).

6                2.   Alleged Failure to Ensure the Court Followed the Plea Agreement (Ground 1)

7                Movant alleges counsel failed to take steps to ensure the Court would follow the plea

8    agreement by failing to obtain pre-approval from the Court. (Doc. 301 at 4.) To the extent that

9    Movant argues she would not have entered the agreement but for her understanding that Ms.

10   Moran intended to ensure the Court would follow the plea agreement, these allegations do not

11   amount to ineffective assistance from counsel. First, Movant's conclusory allegations are directly

12   contradicted by the record. As Movant herself alleges, Ms. Moran informed her before entering

13   the plea agreement that courts did not have to abide by the terms or recommendations of the

14   government, although most do. (*Id.* at 14.) During her change of plea, the Court confirmed

15   Movant's understanding that the agreement would be binding regardless of whether the Court

16   followed it. (Doc. 337 a 6.) Therefore, the contemporary evidence of Movant's understanding of

17   the agreement's terms indicate she did not believe the Court would be bound to follow it. Any

18   alleged failure by Ms. Moran to not obtain pre-approval from the Court cannot constitute an

19   unreasonable error that undermined Movant's understanding of the plea terms, because the plea

20   agreement and Movant's testimony make clear she understood the Court was not bound by its

21   terms. *See United States v. Haisch*, 2019 WL 718115, at *4-5 (E.D. Cal. Feb. 20, 2019) (finding

22   counsel's assistance reasonable where counsel allegedly failed to argue breach of the agreement

23   after the court departed from the government's recommendation because the agreement allowed

24   the court to "impose any sentence it deems appropriate" up to the statutory maximum).

25               Second, even if the allegations constituted deficient conduct, Movant has not shown any

26   resulting prejudice from the alleged deficiencies. Regardless of whether Ms. Moran failed to

27   attempt to secure pre-approval from the Court, Movant has not shown such attempt would have

28   successfully changed the outcome of her case. *See Hill*, 474 U.S. at 59. The Federal Rules of

1    Criminal Procedure prohibit the Court from engaging in discussions with the parties when

2    reaching a plea agreement, making Court pre-approval of Movant's plea arrangement an

3    unavailable form of advocacy. Fed. R. Crim. Pro. 11(c)(1).

4        3.   Alleged Failure to Investigate Criminal History and Expunge State Record (Ground 2)

5        Movant appears to make two related and somewhat overlapping arguments regarding the

6    alleged failure to investigate Movant's criminal history and to expunge her state record. (Doc.

7    301 at 5.) To the extent Movant contends she would not have entered the plea agreement but for

8    her understanding that her attorneys were working to expunge her state record and therefore

9    would impact her sentencing guideline range, such an allegation would be a non-waivable

10   ineffective assistance of counsel claims. However, as described below, this does not constitute

11   deficient conduct such that it undermined her ability to enter the agreement and further did not

12   result in prejudice to her case.

13        a.    *Failure to Investigate Criminal History*

14        Movant makes a general allegation that Ms. Moran failed to investigate her criminal

15   history. (Doc. 301 at 4.) Movant does not specify what actions Ms. Moran should have taken or

16   what impact, if any, her alleged errors had on her entering the plea agreement. During the initial

17   client interview, Movant informed her attorneys that she had four prior state convictions. (*Id.* at

18   13.) In the plea agreement, the parties estimated Movant's criminal history as Category II. (Doc.

19   133 at 9.) After Probation conducted its investigation for the presentencing report, it calculated

20   Movant's criminal history as Category IV, given the public record reported seven separate state

21   convictions. (Doc. 182 at 10-13.) To the extent Movant argues Ms. Moran's failure to investigate

22   her criminal history led to the miscalculation in her plea agreement and impacted her ability to

23   knowingly enter the plea agreement, these allegations do not constitute ineffective assistance of

24   counsel such that they can invalidate the waivers contained in her agreement.

25        Although defense counsel has a "duty to make reasonable investigations or to make

26   reasonable decisions" regarding those investigations (*Strickland*, 466 U.S. at 691), the "duty to

27   investigate and prepare a defense is not limitless." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th

28   Cir. 2001). An inaccurate prediction does not necessarily amount to deficient conduct. *See United*

13

*States v. Sotelo*, 2022 WL 846525, at \*4 (E.D. Cal. Mar. 22, 2022) (finding counsel's inaccurate prediction did not constitute a "gross mischaracterization of the likely outcome," despite a one level criminal history increase and loss of the two-point safety valve). Considering the circumstances and information available to Ms. Moran, as provided by Movant herself, she reasonably weighed Movant's desire not to fight her case with the potential impact of her state charges. (*See* Doc. 358 at 75.)

In addition, Movant has not alleged any resulting prejudice from the failure to investigate her criminal history. Movant does not contend she would have otherwise insisted on taking her case to trial. *See Hill*, 474 U.S. at 59. Rather, Movant told Ms. Kinder she was not interested in "fighting" the case and wanted to enter a plea agreement. (Doc. 358 at 75.) She acknowledged the substantial evidence against her in these charges. (*Id.*) Movant's correspondence with her attorneys corroborates her preference by only expressing her desire to obtain the best deal possible. (*See id.* at 157-61.) Whether Ms. Moran had investigated Movant's criminal history before Movant pleaded guilty, the existence of her state charges remain unchanged, and Movant did not argue that if she had known of her Category IV status, she would have insisted on taking the case to trial. Thus, Movant has not shown prejudice resulting from the alleged failure to investigate her criminal history.

### b.   *Failure to Expunge Movant's State Convictions*

Movant also asserts that Ms. Moran and her firm failed to expunge her state criminal record before sentencing. Movant maintains that she instructed her attorneys to seek expungement of her state charges, repeatedly followed up on the matter, and received no communication regarding the outcome of her request. (Doc. 301 at 13-14.) Ms. Moran and Ms. Kinder contest that Movant ever instructed them to seek expungement and maintain she only requested they investigate the status of her prior criminal charges. (Doc. 358 at 58-59.)

To the extent Movant contends her belief that her attorneys were working to expunge her state record factored into her decision to plead guilty, the prejudice factor is dispositive. First, even if Movant did specifically instruct Ms. Moran's firm to seek expungement, Movant does not

1  contend that anyone from the Moran firm ever informed her that they were in expunged.[2] She

2  understood before entering the agreement the impact of those charges on her federal case. (*See*

3  Doc. 301 at 13; Doc. 358 at 152.) Given this knowledge, Ms. Moran's alleged failure to seek

4  expungement could not have undermined Movant's "ability to make an intelligent decision about

5  whether to accept the plea offer," because Ms. Moran's inactions did not change Movant's

6  understanding of her circumstances. *See Turner*, 281 F.3d at 880 (internal citations omitted).

7       Second, even if Ms. Moran had attempted to expunge Movant's state convictions, there is

8  no evidence to suggest those attempts would have been successful. Rather, the nature of Movant's

9  prior state convictions indicate they could not be expunged. According to the presentencing

10  report, Movant has an extensive list of prior drug-related offenses in state court. (Doc. 182 at 10-

11  13.) These offenses include both misdemeanor and felony convictions, for some of which she

12  served prison time. (*Id.*) California Penal Code § 1203.4 provides an avenue to dismiss or

13  expunge prior misdemeanor convictions, but it does not apply to felony charges. California

14  Proposition 47 allows certain drug-related felony convictions to be reduced to misdemeanors.

15  *People v. Khamvongsa*, 8 Cal. App. 5th 1239, 1243-44 (2017). If a defendant can meet the

16  requirements of both Proposition 47 and California Penal Statute § 1203.4, the prior drug-related

17  felony may be expunged. *Id.*

18       However, Movant cannot meet both sets of requirements. Even assuming her convictions

19  would qualify under Proposition 47, she does not meet the requirements of § 1203.4. Section

20  1203.4(a) only applies if:

21       if they have fully complied with and performed the sentence of the court*, is not then serving a sentence for any offense and is not under charge of commission of any crime*, and has, since the

22  pronouncement of judgment, lived an honest and upright life and has conformed to and obeyed the laws of the land, be permitted by

23  the court to withdraw their plea of guilty or nolo contendere and enter a plea of not guilty; or if they have been convicted after a plea

24  of not guilty, the court shall set aside the verdict of guilty.

25

26

27  [2] The Court also notes there is substantial contradictory evidence to Movant's assertion that she asked Ms. Moran or Ms. Kinder to seek expungement of her prior convictions. Movant's own letter suggests that she understood she had

28  other representation responsible for these matters. (Doc. 358 at 150.) Moreover, the client service agreement between Movant and the Moran firm indicates the scope of representation was limited to her federal charges. (*Id.* at 83.)

*Id.* (emphasis added). Most notably and indisputably, Movant could not have petitioned to expunge her prior convictions while under the charge for the commission of her federal crimes. Given her repeated offenses on drug-related state charges spanning from 1996 through 2015, it is further unlikely that a court would find Movant had "conformed to and obeyed the laws of the land." (Doc. 182 at 10-13.)  Because Movant does not qualify under § 1203.4 to expunge her prior convictions, she cannot show a reasonable probability that but for Ms. Moran's failure to seek expungement, Movant could have received a lower criminal history category and thereby a lower sentence. Thus, regardless of whether Ms. Moran failed to seek expungement, Movant has not shown any prejudice by the alleged deficient conduct.

**B.      Movant Waived her Right to Collaterally Attack under the Remaining Grounds**

Because Movant has not rebutted the presumption of validity accorded to her plea agreement or demonstrated ineffective assistance of counsel to undermine her ability to enter the agreement voluntarily and knowingly, the binding waivers contained therein bar ineffective assistance of counsel claims that do not implicate the knowing or voluntariness of the agreement. *See Abarca*, 985 F.2d at 1014; *see also United States v. Ortiz*, 2019 WL 6727565, *3 (E.D. Cal. Dec. 11, 2019). Specifically, Movant waived her ineffective assistance of counsel claims related to any conduct that occurred after she entered the plea agreement. *Id.*

1.   Failure to Request for Downward Departure (Ground 1)

Movant contends Ms. Moran should have requested a downward departure. (Doc. 301 at 4.) Ms. Moran's actions or alleged inactions involving a request for downward departure occurred in preparation for sentencing and after Movant pleaded guilty. Therefore, Movant has waived her right to challenge her conviction and sentence on this basis. In addition, Movant's allegation is inapposite to the evidence in the record. The record demonstrates Ms. Moran filed a sentencing memorandum urging the Court to impose a sentence below or at the low end of the minimum guideline. (Doc. 181.) Ms. Moran submitted witness statements in support of Movant's character and certificates of completion for various educational and training programs to strengthen the request. (*Id.* at 4-5, 7-8.) Ms. Moran's sentencing memorandum and supporting evidence reflect efforts of a diligent and competent defense attorney, and therefore does not constitute deficient

conduct. *See Lopez v. United States*, 2010 WL 5387509, *3 (D. Mont. Dec. 22, 2010) (finding attorney's conduct was not ineffective for failure to argue a downward variance because he filed a sentencing memorandum detailing the defendant's rehabilitative efforts and included letters from friends and family).

2.  Alleged Deficient Conduct in Presentencing (Ground Three)

Movant asserts Ms. Moran made errors in preparing for and during presentencing, including not providing sufficient advice before her presentencing interview and not providing a copy of the presentencing investigation before sentencing. (Doc. 301 at 6.) Each of these allegations occurred *after* Movant had already entered her plea agreement. These actions, therefore, could not have undermined Movant's ability to enter the agreement voluntarily and knowingly. *Ortiz*, 2019 WL 6727565, *3 (finding defendant waived his ineffective assistance of counsel claims about counsel's failure to argue for the applicability of the safety valve at sentencing because the conduct "occurred after execution of the plea agreement, which contained the waiver of the right to collaterally attack"). As described above, Movant's plea agreement contained express waivers for all non-waivable, collateral attacks on her conviction. (Doc. 337 at 3-6.)  Thus, Movant has waived her claims under Ground Three.

Even if Movant had not waived collateral attacks on her conviction and sentence, she has not established that Moran's conduct prejudicially impacted the outcome of her case. Her motion and reply lack any factual basis to suggest that Ms. Moran's failure to meet with Movant for more than twenty to thirty minutes in preparation for her presentencing interview caused a different outcome in the presentencing report. (*See* Doc. 301 at 14.) In the presentencing report, Probation categorized Movant's criminal history as Category IV, which increased the minimum guideline range during sentencing. (Doc. 182 at 13.) The report relied on publicly available information (e.g., National Crime Information Center, California Department of Corrections and Rehabilitation, etc.) to reach its conclusion, not on information gathered during the interview with Movant. (*Id.* at 10.) Likewise, Movant has not pleaded any facts to suggest Moran's failure to provide her with a copy of the presentencing report impacted the outcome of this case. Accordingly, the Court finds Ground Three does not give rise to an ineffective assistance of

1 counsel claim.

2        3.  <u>Alleged Deficient Conduct at Sentencing (Ground Four)</u>

3       Movant contends Ms. Moran failed to adequately prepare or aid at sentencing by not

4 raising objections and not allowing Movant to speak. As discussed with respect to Ground Three,

5 Movant waived her right to collaterally attack her conviction and sentence arising from allegedly

6 deficient conduct that occurred after entering her plea agreement. *Haisch*, 2019 WL 718115, at

7 *4-5 (finding defendant waived claims for ineffective assistance of counsel arising from failure to

8 argue breach of the plea agreement at sentencing because the conduct did not occur "with respect

9 to the plea agreement" and did not attack the validity of the agreement)

10       Even if not waived, Movant's *post hoc* factual allegations carry little evidentiary weight,

11 considering the contradictory record. First, Ms. Moran filed a sentencing memorandum in which

12 she requested the Court to impose a sentence at the low end or below the guideline range. (Doc.

13 181 at 1.) Although Ms. Moran did not make any speaking objections during the sentencing

14 hearing, the Court acknowledged it had received and reviewed the memorandum along with the

15 supporting letters and certificates. (Doc. 358 at 39-40.) Second, Movant's claim that she was not

16 allowed to speak at her sentencing contradicts the record which proves the Court gave Movant an

17 opportunity to speak:

18         THE COURT: Ms. Taylor, do you wish to be heard?

19         THE DEFENDANT: Yeah. I want to try to read something.

20         . . .

21         (Defendant crying.)

22         MS. MORAN: Would the Court read it?

23         THE COURT: Sure.

24         . . .

25         THE COURT: Okay. The Court has received the letter and has read

26         and now considered the letter.

27         . . .

28         THE COURT: Ms. Taylor, anything further?

1    THE DEFENDANT: No.

2    (Doc. 358 at 41-42.) Despite Movant's inability to speak, the Court still considered her written

3    statement before imposing the sentence. Movant's contradictory allegations in the petition cannot

4    overcome the presumption accorded to statements made under oath, in open court. Thus, Ground

5    Four does not present a viable claim for ineffective assistance of counsel.

6    **C.    Alleged Failure to File Appeal (Ground Five)**

7    Finally, Movant argues counsel failed to file a notice of appeal, communicate with her

8    regarding her requests to appeal, or otherwise provide her with the necessary forms to file it

9    herself. (Doc. 301 at 8.) Although this allegedly deficient conduct also occurred after Movant

10   entered her plea agreement, the Government has not raised waiver as a defense to Ground Five

11   (*See* Doc. 358 at 21.)

12   Failure to file notice of appeal despite an express instruction from the defendant to do so

13   presumptively constitutes both deficient performance and prejudice. *Roe v. Flores-Otega*, 528

14   U.S. 470, 483 (2000). This presumption applies even if the defendant waived the right to appeal

15   in a plea agreement or if the appeal does not have a likelihood of success. *Garza v. Idaho*, 139 S.

16   Ct. 738, 749-50 (2019); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). If

17   the defendant did not make an express request to appeal, but a rational defendant would have

18   sought appeal or the defendant "reasonably demonstrated to counsel that he was interest in

19   appealing," counsel's failure to consult with defendant on the matter constitutes deficient

20   conduct. *Flores-Ortega*, 528 U.S. at 471.

21   The parties dispute whether Movant expressly requested Moran file a notice of appeal.

22   The Government points to Ms. Moran's declaration as evidence that Movant did not request an

23   appeal. (Doc. 358 at 23.) Ms. Moran declared that Movant never asked or instructed her to file a

24   notice of appeal. (*Id.* at 61-62.) Ms. Moran stated the first time she heard of Movant's interest in

25   appealing her sentence was through this habeas petition. (*Id.*) Movant asserts the opposite.

26   According to Movant, she told Ms. Moran she "was upset and wanted to appeal" immediately

27   following the imposition of her sentence. (Doc. 301 at 15.) She maintains that she repeatedly tried

28   to contact Ms. Moran to file a notice of appeal after her sentencing hearing, and Moran never

1    followed up with her. (*Id.* at 15.) To support her assertions, Movant references a letter she sent to

2    Ms. Moran, the day following her sentencing hearing in which she stated: "Don't we still need to

3    appeal my violation before pre-trial?" (Doc. 358 at 167.)

4          The parties have raised a dispute of material fact to warrant an evidentiary hearing. A

5    § 2255 motion requires an evidentiary hearing where "the movant has made specific factual

6    allegations that, if true, state a claim on which relief could be granted." *United States v.*

7    *Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) (quoting *United States v. Hearst,* 638 F.2d 1190,

8    1194 (9th Cir. 1980)). Under this standard, an evidentiary hearing in § 2255 cases is required

9    "[u]nless the motion and the files and records of the case conclusively show that the prisoner is

10    entitled to no relief[.]" 28 U.S.C. § 2255(b); *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir.

11    1981); *see also United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) ("[A] district

12    court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed

13    against the record, do not give rise to a claim for relief or are 'palpably incredible or patently

14    frivolous.'") (quoting *Schaflander*, 743 F.2d at 717); *see also Baumann v. United States*, 692 F.2d

15    565, 571 (9th Cir. 1982) ("a hearing is mandatory whenever the record does not affirmatively

16    manifest the factual or legal invalidity of the petitioner's claims"). While conflicting sworn

17    statements from a defendant and his trial attorney ordinarily trigger an evidentiary hearing where

18    the defendant's version of the facts would entitle him to relief, the Ninth Circuit has held that

19    "merely conclusory statements in a [section] 2255 motion are not enough to require a hearing."

20    *Hearst*, 638 F.2d at 1194 (quoting *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969));

21    *see also United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) ("Where a prisoner's motion

22    presents no more than conclusory allegations, unsupported by facts and refuted by the record, an

23    evidentiary hearing is not required."). This does not require the movant to "detail his evidence,"

24    only that he make factual allegations. *Hearst*, 638 F.2d at 1194.

25          Accepting as true Movant's claims that she asked Ms. Moran to appeal following

26    imposition of the sentence, she states a plausible claim for relief. Ms. Moran's declaration to the

27    contrary creates a factual dispute on a dispositive issue. Movant's question in her letter to Moran

28    after sentencing does not conclusively resolve the issue, because it is unclear whether she was

1   requesting to appeal her prior state violations, or the sentence imposed by the Court in this case.

2   Even if Movant's evidence does not demonstrate an express request to file, it is plausible that her

3   communications with Ms. Moran after sentencing would have reasonably demonstrated her desire

4   to appeal.[3] If Movant can show her correspondence with Ms. Moran reasonably demonstrated a

5   desire to appeal, Movant may likewise have a plausible claim for ineffective assistance of

6   counsel. *See Garza*, 139 S. Ct. at 749-50.

7         Because the Court finds an evidentiary hearing is necessary to resolve Ground Five, the

8   Government has two options. It may continue to oppose Movant's claim for relief, in which case

9   the Court will need to make factual determinations[4] as to whether Movant asked her previous

10  counsel to file a notice of appeal or whether she reasonably demonstrated her desire to appeal.[5]

11  *Sandoval-Lopez*, 409 F.3d at 1198. If the Court determines that Movant's allegations are true, the

12  Court will vacate and reenter the judgment to allow her to file a timely notice of appeal. *Id.* If the

13  Court determines that Movant's allegations in these regards are not true, then Movant is entitled

14  to no further relief. *Id.* In the alternative, the Government may elect not to oppose the pending

15  § 2255 motion on Ground Five and to allow the appeal to proceed without an evidentiary

16  determination. *Id.* If the Government elects this path, the Court will vacate and reenter the

17  judgment, assuming, without deciding, that Movant's ineffective assistance claim is true. *Id.*

18  ///

19  ///

20

21

22  [3] The Government argues that Ms. Moran reasonably concluded there was no nonfrivolous basis for appeal and that
    "[a]n appeal would have been detrimental for Taylor." (Doc. 358 at 23-24.) Regardless of whether Ms. Moran agreed
23  a basis existed to file an appeal, the ultimate decision of whether to appeal a conviction rests firmly with the
    defendant, not counsel. *Garza*, 139 S. Ct. at 741 ("And within the division of labor between defendants and their
24  attorneys, the "ultimate authority" to decide whether to "take an appeal" belongs to the accused.")
    [4] When an evidentiary hearing is warranted in a § 2255 proceeding, an indigent defendant is entitled to the
25  appointment of counsel. Rule 8(c), Rules Governing Section 2255 Cases in the U.S. District Courts (amended
    January 24, 2020). Therefore, if the Government intends to proceed to an evidentiary hearing, the Court will, by
26  separate order, appoint the Federal Defender's Office to represent Movant for purposes of his evidentiary hearing
    pursuant to Rule 8 and consistent with the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A.
27  [5] Even if the Court finds Movant did not expressly instruct Ms. Moran to file an appeal, the inquiry does not end
    there. As described above, failure to consult with a defendant regarding her interest in filing an appeal may constitute
28  deficient conduct if the defendant "reasonably demonstrated to counsel that he was interested in appealing."
    *Sandoval-Lopez*, 409 F.3d at 1196.

**D.      Certificate of Appealability**

The Court's order in this matter will not be final until the Court has ruled upon Movant's claim that her counsel was ineffective by failing to file a notice of appeal on her behalf. *See supra*, Section III(C). The Court, however, indicates its position that a certificate of appealability shall not issue in relation to the claims decided by this order, i.e., for Grounds One, Two, Three, and Four.

A defendant must obtain a certificate of appealability to appeal from the denial or dismissal of her § 2255 motion. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). When a court denies claims in a § 2255 motion on the merits, a certificate of appealability may issue only if the defendant made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons set forth above, the Court concludes that Movant did not make a substantial showing of the denial of a constitutional right. Furthermore, reasonable jurists would not find debatable the Court's assessment of Movant's ineffective assistance of counsel claims under Grounds One, Two, Three, and Four. Accordingly, the Court declines to issue a certificate of appealability as to these grounds.

## IV.      CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Movant has not sufficiently demonstrated ineffective assistance of counsel claims on Grounds One, Two, Three, and Four. As to Ground Five, a factual dispute exists to warrant an evidentiary hearing. Unless the Government files a notice of non-opposition to Movant's claims for ineffective assistance of counsel under Ground Five within **twenty days** of this order, the Court will set a date for an evidentiary hearing. When an evidentiary hearing is warranted in a § 2255 proceeding, an indigent defendant is entitled to the appointment of counsel. Rule 8(c), Rules Governing Section 2255 Cases in the U.S. District Courts (amended Dec. 1, 2019). Therefore, the Court appoints the Federal Defender's Office to represent Movant for purposes of her evidentiary hearing pursuant to Rule 8 and consistent with

the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A. For the reasons set forth above, the Court **ORDERS:**

1.   Movant's § 2255 motion (Doc. 301) on Grounds One, Two, Three, and Four is **DENIED**.

2.   The Court **DECLINES** to issue a Certificate of Appealability as to Grounds One, Two Three, and Four.

3.   Movant's case is referred to the Federal Defender's Office for representation for purposes of an evidentiary hearing.

4.   The Clerk of Court is **DIRECTED** to add the Federal Defender's Office Panel Administrator, Connie Garcia (Connie_Garcia@gd.org), to the service list prior to the docketing of this order.

5.   The Government is **ORDERED** to inform the Court how it wishes to proceed with respect to Ground Five, within **20 days** of the filing date of this order.

6.   An evidentiary hearing will be scheduled, if required, upon receipt of the Government's response.

IT IS SO ORDERED.

Dated:   **May 24, 2022**

UNITED STATES DISTRICT JUDGE